UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

M-I Drilling Fluids UK Ltd.,

       Plaintiff,

  v.

Dynamic Air Inc. and Dynamic Air Ltda.,

       Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 13-2385 ADM/JJG

_____

Scott J. Pivnick, Esq., Adam D. Swain, Esq., Benn Wilson, Esq., Patrick Flinn, Esq., and David Kuklewicz, Esq., Alston & Bird LLP, Washington, DC, and Atlanta, GA; and Eric H. Chadwick, Esq., Patterson Thuente Pederson, PA, Minneapolis, MN, on behalf of Plaintiff.

Kevin P. Hickey, Esq., Carrie L. Hund, Esq., and Steven P. Aggergaard, Esq., Bassford Remele, PA, Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On December 3, 2013, the undersigned United States District Judge heard oral argument on Defendants Dynamic Air Inc. and Dynamic Air Ltda.'s Motion to Dismiss [Docket No. 22]. Plaintiff M-I Drilling Fluids UK Ltd. ("M-I") opposes the motion. For the reasons set forth below, Defendants' motion is granted and this action is dismissed without prejudice.

## II. BACKGROUND

M-I is a private limited company organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom. Compl. [Docket No. 1] ¶ 2. M-I designs and sells equipment used in the process of drilling oil wells, including on the sea floor. The process for drilling such wells brings "subterranean formation cuttings," including rock, sand, and other materials to the drilling rig on the water's surface. See id. ¶ 13. When first brought up, drill cuttings are in a slurry with drilling fluid. This slurry then goes through a separation

process removing some of the drilling fluid, leaving the cuttings with the consistency of a "very thick heavy paste." Id. The cuttings must be disposed of safely, typically by transporting them from the drilling rig onto a ship, and then from the ship onto shore for processing and disposal. M-I supplies drilling fluid systems and other equipment designed to improve drilling performance, maximize productivity, and manage the waste generated through the drilling process. Id. ¶¶ 12-13.

Defendant Dynamic Air Ltda. is a corporation organized under the laws of Brazil, with its principal place of business in Brazil. Dynamic Air Ltda. is a subsidiary of Defendant Dynamic Air Inc., a corporation organized under the laws of Minnesota, with its principal place of business in St. Paul, Minnesota. Id. ¶¶ 3-4. In late 2011 or early 2012, non-party Petróleo Brasileiro ("Petrobras") initiated a request for proposal (RFP) process, seeking a pneumatic conveyance system to transport drill cuttings from an oil rig onto a ship. M-I's "sister company and customer" M-I Swaco do Brasil - Comerico, Servicos E Mineracao Ltda. ("M-I Brazil") submitted a bid to provide the equipment, as did Dynamic Air Ltda. Id. ¶ 24.

Dynamic Air Ltda. won the bidding process, and thereafter designed, sold, and operated at least three pneumatic conveyance systems for Petrobras. In February 2013, Dynamic Air Ltda. installed a system that pneumatically conveys drill cuttings from "P-59," a drilling rig in Brazilian waters, onto the HOS Resolution, a United States flagged ship. In August 2013, Dynamic Air Ltda. installed a similar system on board the HOS Pinnacle, another United States flagged ship, to remove drill cuttings from "P-III," another oil rig in Brazilian waters. Id. ¶¶ 24-26. Both ships transport drill cuttings to shore for further processing and disposal. M-I alleges both systems are currently operating. It also alleges Dynamic Air Ltda. installed and is operating

a third system on board the P-III rig itself.  Id.

At issue in this case are five United States patents M-I holds for methods, systems, and apparatuses used in the collection, conveyance, transportation, and/or storage of drilling waste, including the paste-like drill cuttings.  The patents are numbered: (1) 6,702,539 (the "'539 Patent); (2) 6,709,217 (the "'217 Patent"); (3) 7,033,124 (the "'124 Patent"); (4) 7,186,062 (the "'062 Patent"); and (5) 7,544,018 (the "'018 Patent").  Sometime before the Petrobras RFP, M-I alleges as many as eight M-I Brazil employees who had worked on pneumatic conveyance technology left M-I Brazil to work for Dynamic Air Ltda.  Id. ¶ 24.  M-I alleges Defendants had never previously designed or sold such systems, and Defendants obtained knowledge of these systems through M-I's former employees and from closely competing against M-I in past RFPs.  M-I claims Defendants have directly infringed and contributed to the infringement of the five patents at issue by making, selling, and using pneumatic conveyance systems such as those on the HOS Resolution and the HOS Pinnacle.  Id. ¶¶ 31-85.

### III.  DISCUSSION

**A.  Applicable Standards**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  In evaluating such a motion, the court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted).  The court may not consider matters outside the pleadings in connection with a Rule 12(b)(6) motion, but "documents necessarily embraced by the complaint are not matters outside the pleading[s]."  Ashanti v. City of Golden Valley, 666

F.3d 1148, 1151 (8th Cir. 2012) (citation omitted). When considering dismissal based on a lack of personal jurisdiction under Rule 12(b)(2), the ruling court may consider materials outside the pleadings. See, e.g., Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

Defendants move to dismiss the Complaint on three grounds. First, Defendants argue United States patent law does not extend to ships sailing on the high seas or in foreign waters, essentially meaning the Court lacks subject matter jurisdiction. Second, Defendants argue M-I has not demonstrated why personal jurisdiction should attach to Dynamic Air Ltda., a Brazilian subsidiary, because Dynamic Air Ltda. has had limited or no contact with Minnesota. Third, Defendants argue M-I has failed to state a claim against Minnesota parent company Dynamic Air Inc. The Court addresses the latter two arguments, finding them determinative.

**B. Personal Jurisdiction Over Dynamic Air Ltda.**

To some extent, the parties overlap their Rule 12(b)(6) and 12(b)(2) analyses, regarding failure to state a claim and a lack of personal jurisdiction, respectively. M-I argues that even if it has failed to state an independent claim against Dynamic Air Inc., Dynamic Air Inc. should remain a party because it shares alter ego liability for infringement with Dynamic Air Ltda. But the parties also argue that the alter ego doctrine justifies exercising personal jurisdiction over Dynamic Air Ltda. Personal jurisdiction, as a threshold matter, will be addressed first.

Because Minnesota's long-arm statute is coextensive with the Due Process Clause, a court may only exercise personal jurisdiction if doing so comports with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994). The Due Process Clause requires the nonresident defendant have "minimum contacts" with the forum state such that it "should reasonably anticipate being haled into court there . . . and maintenance of the suit does not offend traditional notions of fair play and substantial justice." Miller v. Nippon Carbon Co., Ltd., 528

F.3d 1087, 1090-91 (8th Cir. 2008) (quotation omitted); see also Akro Corp. v. Luker, 45 F.3d 1541, 1544-45 (Fed. Cir. 1995) (holding the Federal Circuit, like the Eighth Circuit, applies minimum contacts test in patent infringement cases).  The Eighth Circuit has stated a five-part test for measuring whether these "minimum contacts" exist:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Bell, 22 F.3d at 819.  "The first three factors are of primary importance."  Id.  Both general and specific personal jurisdiction rely on these factors, though general jurisdiction applies only when a defendant has had "systematic and continuous" contacts with the forum, such that the contracts need not relate to the cause of action to satisfy due process.  Zumbro, Inc. v. Cal. Natural Prods., 861 F. Supp. 773 (D. Minn. 1994).

As discussed above, M-I's primary attempt to establish personal jurisdiction over Dynamic Air Ltda. relies on the alter ego doctrine.[1]  In certain circumstances, Eighth Circuit courts have exercised jurisdiction over a nonresident entity if it so controls and dominates a resident entity that finding jurisdiction satisfies due process.  See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 596-97 (8th Cir. 2011).  Jurisdiction may be appropriate where, for example, the parent corporation operates synergistically with its subsidiary, such that the relationship transcends "mere ownership."  Anderson v. Dassault Aviation, 361 F.3d 449, 452-53 (8th Cir. 2004).  The typical situation—and those primarily addressed by Eighth Circuit decisions—have concerned the exercise of personal jurisdiction over

---

[1] There is no dispute that the Complaint alleges general personal jurisdiction over Dynamic Air Inc., provided a valid claim exists.  M-I alleges Dynamic Air Inc. is organized under the laws of Minnesota and has its principal place of business in the state.  The United States Supreme Court has recently reiterated that such facts, which render a party "at home" in the state, are sufficient for general jurisdiction.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011); Daimler AG v. Bauman, 134 S. Ct. 746, 760-61 (2014).

a nonresident parent company due to the actions of its in-state subsidiary. See, e.g., id.

In some cases, federal courts have extended jurisdiction in the converse situation. In other words, courts have sometimes exercised jurisdiction over a foreign subsidiary based on the parent company's in-state business. However, the exercise of jurisdiction must be determined on a case-by-case basis, and is generally appropriate only where the corporations are alter egos, or the parent company has taken in-state actions on behalf of the subsidiary. See, e.g., Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd., 89 F.3d 519, 523-24 (8th Cir. 1996); Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1271 (Fed Cir. 1998); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed.) ("There is a reluctance to exercise personal jurisdiction over a subsidiary merely because its parent corporation is doing business in the forum state.").

In this case, M-I has not demonstrated why jurisdiction should be exercised over Dynamic Air Ltda. based on Dynamic Air Inc.'s Minnesota contacts. M-I does not allege or argue that Dynamic Air Inc. took in-state actions on behalf of Dynamic Air Ltda., or that Dynamic Air Ltda. otherwise took advantage of its corporate relationship with Dynamic Air Inc. to conduct business in Minnesota. See Digi-Tel, 89 F.3d at 523-24. And, in its pleadings, M-I does not establish prima facie evidence of an alter ego relationship between Defendants. M-I's only evidence is two printouts of Dynamic Air Inc.'s website, on which Dynamic Air Ltda. is listed as an "international office" for Brazilian sales. Adam D. Swain Decl. [Docket No. 28] Exs. 1, 2. While website statements regarding a corporate relationship may be relevant to alter ego analysis, M-I's evidence standing alone does not demonstrate sufficient control or dominance over Dynamic Air Ltda. See Epps v. Stewart Information Servs. Corp., 327 F.3d 642, 650 (8th Cir. 2003). On the other hand, M-I acknowledges that Dynamic Air Ltda. separately bid for and won the Petrobras RFP process, and that Dynamic Air Ltda. has its own

employees and independent headquarters in Brazil. Under these circumstances, M-I has not demonstrated a sufficiently synergistic relationship between Dynamic Air Inc. and Dynamic Air Ltda., such that jurisdiction over the Brazilian company is appropriate.

The Complaint includes two additional allegations attempting to establish personal jurisdiction over Dynamic Air Ltda., but neither succeeds. First, M-I alleges Dynamic Air Ltda. conducts "regular and systematic business" with Dynamic Air Inc. in the state of Minnesota. Compl. ¶ 7. Even if this allegation were not entirely conclusory, conducting business in Minnesota is alone not sufficient to render the subsidiary "at home" in the forum state. See Daimler AG, 134 S. Ct. at 760-61 (2014). Second, M-I alleges the Court has jurisdiction over Dynamic Air Ltda. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Compl. ¶ 9. Under Rule 4(k)(2), a court may exercise jurisdiction over a nonresident defendant if the plaintiff serves a summons on the defendant, the defendant is not subject to the jurisdiction of any state court, and exercising jurisdiction is consistent with the United States Constitution and laws. Here, Defendants argue, and M-I does not dispute, that M-I has failed to serve Dynamic Air Ltda. with a summons. In addition, M-I has failed to demonstrate Dynamic Air Ltda.'s contacts with the United States such that exercising jurisdiction would satisfy due process. See, e.g., Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip Medico, 563 F.3d 1285, 1295-96 (Fed. Cir. 2009). Thus, neither of these avenues lead to personal jurisdiction.

Because the Court ultimately finds that the alter ego doctrine has not been sufficiently alleged to establish personal jurisdiction, it similarly holds that alter ego liability has not been sufficiently alleged to justify piercing the corporate veil and exposing Dynamic Air Inc. to infringement liability.

**C. Failure to State a Claim Against Dynamic Air Inc.**

In their motion, Defendants argue M-I has stated conclusory and insufficient allegations of infringement against Dynamic Air Inc. M-I responds that even a basic recitation of patent infringement elements should survive dismissal under notice pleading requirements for patent claims.

M-I has failed to state a plausible claim against Dynamic Air Inc. The factual allegations in the Complaint focus almost exclusively on Dynamic Air Ltda. Specifically, M-I alleges that: Dynamic Air Ltda. poached M-I Brazil's employees, Dynamic Air Ltda. submitted a bid and won the RFP process, and Dynamic Air Ltda. installed and operated the pneumatic systems at issue. Compl. ¶¶ 24-26. In just a single instance, M-I describes Dynamic Air Inc. as having a role in the alleged infringement, and even then, the role is summarily alleged. Namely, M-I alleges, "Dynamic Air Ltda. was the winner of the bidding process, and, upon information and belief, thereafter <u>along with Dynamic Air [Inc.]</u> designed, sold and operated such a system on the HOS Resolution . . . ." <u>Id.</u> ¶ 24 (emphasis added). Nowhere else in the Complaint does M-I allege factual specifics concerning Dynamic Air Inc. Attempting to buttress its pleading, M-I cites allegations pertaining to "Defendants" as a group. But many of these broad allegations logically refer to Dynamic Air Ltda. alone. For instance, M-I specifically names Dynamic Air Ltda. as the party which installed a pneumatic conveyance system on the HOS Pinnacle. M-I further alleges "Defendants" as a group then transported the drill cuttings from the ship for further processing, even though M-I does not allege Dynamic Air Inc. had any role in the installation or operation of the system. On its face, the Complaint fails to plausibly identify conduct by Dynamic Air Inc. that has allegedly infringed the patents in suit.

M-I attempts to escape this conclusion by arguing Form 18, in the Appendix to the

Federal Rules of Civil Procedure, states a more lenient pleading standard.  Form 18 provides a sample complaint for patent infringement, and thus states the basic requirements for an infringement claim:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1334-35 (Fed. Cir. 2012) (citation omitted).  The Federal Circuit has held that because the United States Congress adopted Form 18, the form qualifies as an amendment to the Federal Rules of Civil Procedure.  Id.  Thus, to the extent Form 18 conflicts with Rule 8 pleading standards, Form 18 must control.  Id.

However, the Federal Circuit has further held that Form 18 and Rule 8 do not necessarily conflict.  K-Tech Telecomm., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277 (Fed. Cir. 2013).  In K-Tech, the Federal Circuit held that Form 18 does not alter the notice and facial plausibility requirements of Rule 8, and that a conflict between the two standards need not occur because a complaint satisfying Form 18 may also satisfy Rule 8.  See K-Tech, 714 F.3d at 1284-85.  Thus, under Form 18, a patent infringement complaint must still be evaluated in terms of whether it places the defendant on notice of the allegedly infringing conduct, and whether it states a facially plausible claim of infringement.  Id. at 1284, 1286-87.

The Federal Circuit held the plaintiff in K-Tech had successfully stated claims under Form 18 and Rule 8.  The plaintiff alleged patent infringement against two parties: DirecTV and Time Warner Cable, Inc. ("Time Warner").  The plaintiff described its patented systems and methods, and indicated how its patent addressed a regulatory requirement for the broadcast of

9

digital television. K-Tech, 714 F.3d at 1285. The plaintiff then referenced a patent held by DirecTV, described its communications with DirecTV, and described its explanation for why DirecTV had infringed. Regarding Time Warner, the plaintiff provided a specific example of a television program broadcast and how Time Warner's assignment of digital channels to this program infringed the patent. Id. at 1285-86. These allegations were sufficient to place each television company on notice as to what the patents claimed, how the plaintiff understood the infringing systems to work, and why the plaintiff viewed each system as infringing. Id.; see also In re Bill of Lading, 681 F.3d at 1335-36 (finding complaints stated claims because plaintiff alleged, in part, specifically who was infringing and what activities constituted infringement).

Even assuming Form 18 establishes a more lenient pleading standard than Rule 8, M-I still has not stated a claim for infringement against parent company Dynamic Air Inc. Undoubtedly, M-I has alleged sufficient facts to successfully state patent infringement claims against subsidiary Dynamic Air Ltda. Through the Complaint, Dynamic Air Ltda. knows what patents are at issue, what conduct and technology is alleged to be infringing, and why. It cannot fairly be said Dynamic Air Inc. has the same understanding. Unlike the plaintiff in K-Tech, M-I has not plausibly alleged infringing conduct by each Defendant. Instead, M-I has alleged a single, conclusory phrase regarding Dynamic Air Inc. See Compl. ¶ 24 (stating Dynamic Air Ltda. infringed ". . . along with Dynamic Air [Inc.]"). The remainder of the Complaint refers to Defendants interchangeably, presumably in an attempt to implicate both. While M-I need not prove its case at this stage, it must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Prism Techs., LLC v. AT&T Mobility, LLC, No. 8:12CV122, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012) (citing Hamilton v. Palm, 621 F.3d 816, 817 (8th Cir. 2010)). Here, it cannot be concluded that

Dynamic Air Inc. infringed the patents at issue because M-I has not plausibly alleged any infringing conduct specifically by Dynamic Air Inc.[2]

## IV. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Dynamic Air Inc. and Dynamic Air Ltda.'s Motion to Dismiss [Docket No. 22] is **GRANTED**; and

2. The Complaint [Docket No. 1] is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: February 6, 2014.

---

[2] This action is dismissed without prejudice, potentially allowing M-I the opportunity to cure the facial deficiencies in the Complaint and re-file. However, M-I has conceded that M-I Brazil has filed a parallel patent action in Brazil against Dynamic Air Ltda., to enforce Brazilian patents covering the same methods and technology at issue. Although M-I contends the Brazilian patents do not cover all aspects of the U.S. patents, the Brazilian patent action may appropriately affect whether M-I can or should re-plead its case here.