UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

M-I Drilling Fluids UK Ltd.
and M-I LLC,

          Plaintiffs,

          v.

Dynamic Air Ltda.,

          Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-2385 ADM/HB

Patrick Flinn, Esq., Alston & Bird LLP, Atlanta, GA and, Eric H. Chadwick, Esq., Patterson Thuente Pederson, PA, Minneapolis, MN, on behalf of Plaintiffs.

Todd Werner, Esq. and Alan Carlson, Esq., Carlson Caspers Vandenburgh Lindquist & Schuman PA, Minneapolis, MN, on behalf of Defendant.

## I. INTRODUCTION

On January 22, 2016, the undersigned United States District Judge heard oral argument on Defendant Dynamic Air Ltda.'s ("DAL") Motion to Dismiss [Docket No. 59]. Plaintiffs M-I Drilling Fluids UK Ltd. ("M-I") and M-I LLC oppose the motion. For the reasons set forth below, Defendant's motion is granted.

## II. BACKGROUND

### A. The Complaint

M-I is a private limited company organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom, and M-I LLC is a United States company incorporated in Delaware. Am. Compl. [Docket No. 100] ¶ 2. M-I designs and sells equipment used in the process of drilling oil wells, including on the sea floor. Id. ¶¶ 10-11. Its process for drilling wells brings "subterranean formation cuttings," including rock, sand, and other materials

to the drilling rig on the water's surface. Id. ¶ 11. When first brought up, the drill cuttings are in a slurry with drilling fluid. This slurry is then processed to remove some of the drilling fluid, leaving the cuttings with the consistency of a "very thick heavy paste." Id. The cuttings must be disposed of safely, typically by transporting them from the drilling rig onto a ship, and then from the ship onto shore for processing and disposal. Id. M-I supplies drilling fluid systems and other equipment designed to improve drilling performance, maximize productivity, and manage the waste generated through the drilling process. Id. ¶¶ 10-12.

Defendant DAL is a corporation organized under the laws of Brazil, with its principal place of business in Brazil. Id. ¶ 4. DAL is a subsidiary of Dynamic Air Inc. ("DAI"), a corporation organized under the laws of Minnesota and headquartered in Minnesota. Id. ¶ 4. DAL was originally financed and capitalized by funds from DAI. The head of DAL, Horacio Paez, makes annual trips from Brazil to DAI in Minnesota. Paez Decl. [Docket No. 65] ¶ 24.

In late 2011 or early 2012, non-party Petróleo Brasileiro ("Petrobras") initiated a request for proposal ("RFP") process, seeking a pneumatic conveyance system to transport drill cuttings from an oil rig onto a ship. Am. Compl. ¶ 22. M-I's "sister company and customer" M-I Swaco do Brasil - Comerico, Servicos E Mineracao Ltda. ("M-I Brazil") submitted a bid to provide the equipment, as did DAL. Id.

DAL won the bidding process, and thereafter designed, sold, and operated at least three pneumatic conveyance systems for Petrobras. Id. The contract between DAL and Petrobras was silent as to the flag-state of ships on which Petrobras might lease and require DAL to perform installation. See First Werner Decl. [Docket No. 62] Ex. B. Petrobras ultimately required installation on ships flying under the flags of several countries, including the United States,

Norway, and the United Kingdom.  See Second Werner Decl. [Docket No. 114] Ex. 5 ¶ 4.  In February 2013, DAL installed a system that pneumatically conveys drill cuttings from "P-59," a drilling rig in Brazilian waters, onto the *HOS Resolution*, a U.S.-flagged ship.  Am. Compl. ¶¶ 22–23.  In August 2013, DAL installed a similar system on board the *HOS Pinnacle*, another U.S.-flagged ship, to remove drill cuttings from "P-III," another oil rig in Brazilian waters.  Id. ¶ 24.  Both ships transport drill cuttings to shore for further processing and disposal.

Sometime before the Petrobras RFP, M-I alleges as many as eight M-I Brazil employees who had worked on pneumatic conveyance technology left M-I Brazil to work for DAL.  Id. ¶ 22.  M-I alleges DAL and Dynamic Air, Inc. had never previously designed or sold such systems and obtained knowledge of these systems through M-I's former employees and from competing against M-I in past RFPs.  Id.  The General Manager of DAL's Oil & Gas Division, Marcelo Osorio, is one such former M-I Brazil employee.  See Second Werner Decl. Ex. 5.  During the course of his employment with M-I Brazil, Osorio prepared proposals for the removal of drill cuttings pursuant to a contract between M-I Brazil and Petrobras.  De Medeiros Decl. [Docket No. 108] ¶ 4. Under this contract, Petrobras required M-I to install pneumatic conveyance equipment aboard 7 ships, 3 of which were U.S.-flagged.  Id. ¶ 5.  As such, Osorio was aware that Petrobras had previously required equipment installation on U.S.-flagged ships.

M-I holds five United States patents for methods, systems, and apparatuses used in the collection, conveyance, transportation, and/or storage of drilling waste, including the paste-like drill cuttings.  Am. Compl. ¶ 13.   M-I LLC is an exclusive licensee of the asserted patents.  Id. ¶ 14.  The patents are numbered: (1) 6,702,539 (the "'539 Patent); (2) 6,709,217 (the "'217 Patent"); (3) 7,033,124 (the "'124 Patent"); (4) 7,186,062 (the "'062 Patent"); and (5) 7,544,018

(the "'018 Patent"). Id. ¶¶ 29–83.

M-I claims DAL and Dynamic Air, Inc. directly infringed and contributed to the infringement of the five patents at issue by making, selling, and using pneumatic conveyance systems such as those on the *HOS Resolution* and the *HOS Pinnacle*. Id. Litigation related to the same activities at issue here is currently underway in Brazil. See First Werner Decl. Ex. C.[1]

**B. Procedural History**

DAL and Dynamic Air, Inc. moved to dismiss this action for failure to state a claim in October 2013. See Mot. Dismiss [Docket No. 22]. The Court granted the motion as to both parties on February 6, 2014. See Order [Docket No. 32]. The Court found that it lacked personal jurisdiction over DAL, stating, in part, that Rule 4(k)(2) jurisdiction was improper because DAL had not been served with a summons and M-I had not pled sufficient facts to show that DAL's contacts with the United States were sufficient so that exercising jurisdiction would adhere to due process requirements. See id. at 7. The Court further held that M-I failed to state a plausible infringement claim against Dynamic Air Inc. as it did not allege infringing conduct by Dynamic Air Inc. See id. at 10–11.

M-I subsequently moved to amend the judgment, arguing that it was improper to dismiss DAL when M-I had not effectuated service on the entity and the service process was ongoing. See Mot. Am. J. [Docket No. 38]. In an abundance of caution, the Court granted M-I's motion, allowing M-I the opportunity to continue its efforts to serve DAL. See Order [Docket No. 44]. Once DAL was served, DAL was directed to "address the issue of personal jurisdiction if it so chooses." Id. at 3.

---

[1]Amazingly, this Court does not speak Portuguese. Accordingly, the documents written in Portuguese relating to the corresponding Brazilian litigation submitted in Werner Decl., Ex. C were not considered. At the hearing, counsel for DAL represented that M-I and M-I Brazil had filed suit in Brazil for patent infringement against DAL and that "[the litigation] is in all respects the same as what is going on here in the United States." Tr. [Docket No. 118] 8:5–6.

M-I effectuated service on DAL and on September 9, 2015, DAL filed the present Motion to Dismiss, arguing lack of personal jurisdiction. Shortly thereafter, M-I made a Motion for Jurisdictional Discovery [Docket No. 71] and a Motion to Amend the Complaint [Docket No. 86]. In its Motion for Jurisdictional Discovery, M-I sought discovery on its asserted grounds for personal jurisdiction: (1) that DAL purposefully availed itself of jurisdiction in the United States by operating the accused systems on U.S.-flagged ships; and (2) that DAL is the alter ego of Dynamic Air Inc. and/or that Dynamic Air Inc. is the controlling partner of DAL. Magistrate Judge Hildy Bowbeer granted in part and denied in part M-I's motion to amend. The Motion was denied insofar as M-I could not add facts related to an alter ego theory, but granted to allow the removal of Dynamic Air Inc. as a defendant and the addition of M-I LLC as a plaintiff. See Min. [Docket No. 97]. Judge Bowbeer additionally granted M-I's motion for jurisdictional discovery in part, allowing limited discovery to take place regarding the question of whether DAL purposefully availed itself of U.S. jurisdiction. See Order [Docket No. 96]. Due to this additional jurisdictional discovery, the parties were permitted to submit supplemental briefing prior to the hearing on the motion to dismiss. See [Docket Nos. 107, 113].[2]

### III. DISCUSSION

**A. Applicable Standards**

District courts apply the law of the Federal Circuit, rather than that of regional circuits, to determine whether personal jurisdiction is appropriate in patent infringement cases. Red Wing Shoe Co., Inc. v. Hockerson-Halbertstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998). When

---

[2]M-I amended the Complaint on November 10, 2015, after the pending Motion to Dismiss was filed. No party has argued that the Amended Complaint moots DAL's Motion to Dismiss, likely because the substantive claims in the Amended Complaint remain the same. The Court maintains discretion to apply arguments raised in a pending motion to dismiss to a later filed amended complaint and will do so here. See Cartier v. Wells Fargo Bank, N.A., 547 Fed. Appx. 800, 803–04 (8th Cir. 2013) (holding that the district court did not err in treating a motion to dismiss an original complaint as applying to a later filed amended complaint).

personal jurisdiction is based on affidavits and other written materials, rather than an evidentiary hearing, a plaintiff need only make a prima facie showing that defendants are subject to personal jurisdiction. Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002). In considering a motion to dismiss, the facts alleged in the complaint must be accepted as true and any factual conflicts must be resolved in the plaintiff's favor. Id.

**B. Personal Jurisdiction Over DAL**

Plaintiffs argue that this Court has personal jurisdiction over DAL under Federal Rule of Civil Procedure 4(k). Rule 4(k)(2) allows a federal court to exercise personal jurisdiction over a defendant if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's court of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009). DAL does not contest the first two factors under Rule 4(k). Rather, at issue between the parties is whether exercise of personal jurisdiction over DAL complies with due process.[3]

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, [the defendant must] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). A party may be subject to either general or specific jurisdiction under the Due

---

[3] At the hearing, Plaintiffs stated that they were no longer pursuing an alter-ego jurisdictional theory. See Tr. 22:9–10. Plaintiffs were less clear, however, regarding whether they wished to continue to pursue the partnership theory of jurisdiction, as counsel briefly alluded to the corporate structure of DAL. In her order on jurisdictional discovery, Judge Bowbeer soundly rejected this theory. See Order at 12–13. The Court agrees with her reasoning. Moreover, given that the supplemental briefing did not address this theory, the Court considers it abandoned.

6

Process Clause. Plaintiffs do not argue that DAL is subject to general personal jurisdiction in Minnesota, rather Plaintiffs contend there is specific personal jurisdiction over DAL pursuant to Rule 4(k)(2).

The Federal Circuit has promulgated a three factor test to determine whether specific personal jurisdiction under Rule 4(k)(2) comports with due process: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to the defendant's activities with the forum, and (3) whether assertion of personal jurisdiction is reasonable and fair. Synthes, 563 F.3d at 1297. Rule 4(k) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." Id. at 1295–96. "The plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." Grober v. Mako Prods., Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012) (citation omitted).

### 1. Purposefully Directed Activities

The parties focus their jurisdictional arguments on whether DAL purposefully directed its activities into United States territory. Plaintiffs argue that purposeful availment occurred when DAL installed and operated the accused pneumatic conveyance systems on two U.S.-flagged ships, the *HOS Pinnacle* and *HOS Resolution*. In response, DAL contends that because its contract with Petrobras required it to install the accused system wherever Petrobras directed, DAL had no control over where the systems were ultimately installed and, as such, did not purposefully direct any activity to the United States.[4]

---

[4] In a related case, M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc., 14-cv-4857, this Court previously concluded under the Law of the Flag that United States territory extends to U.S.-flagged ships. See Order [Docket No. 30]. The parties have not disputed this conclusion in arguing this motion.

For this portion of the due process inquiry, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quotations omitted).

Here, Petrobras, not DAL, had exclusive control over where the accused systems were installed. The contract required DAL to install and operate pneumatic conveying systems on Petrobras oil rigs and the ships supporting those rigs in the Exclusive Economic Zone of Brazil. Under the contract terms, DAL was required to have six systems available for installation in "maritime units" and zero systems available for "vessels" at the start of the contracting period. First Werner Decl. Ex. B. ¶ 3.4.3,  However, the contract additionally mandated that, upon request from Petrobras, DAL "may be required" to install up to 10 systems for both maritime units and vessels. Id. ¶ 3.4.3.1 (emphasis added). Accordingly, the contract did not explicitly identify the ships on which DAL would be require to make installations, much less the flags under which these ships were operated. Vessel installation under the contract terms was only a possibility—a possibility exclusively under Petrobras' direction. At the time DAL contracted with Petrobras, it was unknown if DAL had no idea if it would be required to install the system on ships or the flag state of such ships. DAL's contact with the *HOS Pinnacle* and the *HOS Resolution* was therefore due to the unilateral activity of another party and random insofar as it was completely dependent on Petrobras' direction. Said differently, Plaintiffs cannot show that DAL "purposefully availed itself of the privilege of conducting activities" within the United

States when DAL had no control over where the accused systems were ultimately installed. Hanson, 357 U.S. at 253.

In Bellisio Foods, Inc. v. Prodo Pak Corp., the court came to a similar conclusion that personal jurisdiction cannot arise from contacts created by a unilateral choice of a third party. No. 07-4520, 2008 WL 4867352 (D. Minn. Nov. 4, 2008). In that case, the plaintiff entered into a contract to purchase a packing machine from the defendant. Id. at *1–2. During contractual negotiations, the delivery destination of the machine was not specified. Id. at *2. After negotiations concluded, the defendant learned that the plaintiff requested delivery to Minnesota. Id. The defendant ultimately failed to deliver the machine and was sued for breach of contract in Minnesota. Id. The court dismissed for lack of personal jurisdiction, concluding that the defendant had not purposefully directed activities to Minnesota because "if [the defendant] had wanted to avoid any connection with Minnesota, it could have done so only by breaching its contract to sell the machine to [the plaintiff]. In effect, [the defendants] were trapped into doing business with a Minnesota resident." Id. at *8. This lack of choice and direction was critical to the court's conclusion, stating that the "very function of the purposeful-availment requirement is to ensure that defendants are able to decide freely whether to engage in actions that might subject them to jurisdiction in a foreign forum." Id. at *7. DAL's position here closely parallels that of the defendant in Bellisio—DAL's connection with the United States was completely dependent on Petrobras' unilateral choice to lease U.S.-flagged ships, a choice that was not explicitly contemplated prior to the contract's completion.

The evidence secured by jurisdictional discovery does not alter this conclusion. Plaintiffs argue that prior to entering into the contact with Petrobras, DAL knew that it likely would be required to install and operate the accused system on U.S.-flagged ships. Plaintiffs base this

conclusion on the knowledge of DAL's General Manager for its Oil & Gas Division, Marcelo Osorio. Osorio was previously employed by M-I Brazil during a time when M-I Brazil was contracted to install pneumatic conveyance equipment for Petrobras. During the course of his employment with M-I Brazil, Osorio recalls conveyance equipment being installed on U.S.-flagged ships under the Petrobras contract. Osorio additionally recalls equipment installation on ships flying under the flags of several other countries, including Brazil, Liberia, the United Kingdom, and Vanautu. Second Werner Decl., Ex. 5 ¶ 2.

The parties contest whether Osorio's knowledge can properly be imputed to DAL. Plaintiffs argue that under Minnesota law an agent's knowledge of facts acquired prior to his agency may be attributed to the agent's principal. Plaintiffs cite to PHL Variable Ins. Co. v. 2008 Christa Joseph Irrevocable Trust, wherein the court stated, "[k]nowledge of an agent acquired previous to the agency, but appearing to be actually present in his mind during the agency, and while acting for his principal in the particular transaction or matter, will, as respects such transactions or matter, be deemed notice to his principal, and will bind him as fully as if originally acquired by him." 970 F. Supp. 2d 932, 944 (D. Minn. 2013) (quotation omitted). DAL emphasizes, however, that under this standard advanced by Plaintiffs, information acquired by an agent is only attributed to the principal when that information was present in the mind of the agent during the relevant transaction, and Osorio knew nothing regarding the ships Petrobras would ultimately lease under the contract between Petrobras and DAL. See Second Werner Decl., Ex. 5 ¶ 3 ("I did not know, and I am unaware of anyone else at [DAL] who knew what supply ships Petrobras would lease and instruct [DAL] to install its equipment prior to its signing of the contract with Petrobras.").

Assuming that Osorio's knowledge of Petrobras previously requiring M-I Brazil to install

equipment on U.S.-flagged ships could be attributed to DAL, this knowledge is not indicative of what would be required by Petrobras under the DAL contract. As noted by DAL, Plaintiffs' argument is premised on the assumption that past is prologue—that is, Petrobras' demands under a contract with one entity can somehow predict Petrobras' future demands under a separate contract with a different entity. At most, Osorio's knowledge establishes that there was a possibility Petrobras might require DAL to install equipment on a U.S.-flagged ship. Purposeful availment, however, requires more than a mere possibility. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citations omitted)).

Because Plaintiffs have failed to show that DAL purposefully directed activities at the United States, whether DAL's activities arise from within the United States will not be addressed here. Plaintiffs have not satisfied their burden to show that personal jurisdiction over DAL adheres to due process.

**2. Reasonable and Fair**

Additionally, personal jurisdiction is lacking because even if Plaintiffs had satisfied the first two prongs of the specific jurisdiction injury, exercising specific jurisdiction over DAL would not be reasonable and fair. "To determine whether exercising personal jurisdiction would comport with 'fair play and substantial justice,' [the Court considers] five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in

furthering fundamental substantive social policies." <u>Synthes</u>, 563 F.3d at 1299 (citation omitted). These factors may "render jurisdiction unreasonable," even in the case of sufficient minimum contacts . <u>Burger King</u>, 471 U.S. at 477.

First, the burden on DAL to litigate in this court would be substantial. DAL cites to burdens including frequent travel between Brazil and the United States, the language barrier and need for translation of "countless documents," and conflicts in the law with Brazilian litigation addressing the identical underlying activities of this case. The Court finds these burdens significant. Indeed, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness in stretching the long arm of personal jurisdiction over national borders." <u>Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.</u>, 480 U.S. 102, 114 (1987). In attempting to reduce the significance of this burden, Plaintiffs cite to Paez's voluntary annual travel to the United States to DAI's Minnesota headquarters. But an annual trip of one employee to the United States does not equate to the burdens of defending a complex patent infringement case. This factor weighs heavily in DAL's favor.

As to the United States' interest in adjudicating this dispute, the result of this factor does not strongly favor either party. This is a patent infringement action and the United States does have a "substantial interest" in enforcing its patent laws. <u>See</u> <u>Synthes</u>, 563 F. 3d at 1299 (quoting <u>Depreny Animal Health</u>, 297 F.3d at 1356). Additionally, as noted by the Federal Circuit in <u>Synthes</u>, the United States also maintains an interest in discouraging injuries resulting from patent infringement that occur within its boundaries. <u>See</u> <u>id.</u> at 1299–1300. However, the injury resulting from the alleged patent infringement in the United States (on the *HOS Resolution* and *HOS Pinnacle*) is uncertain at this stage. Additionally, all of the economic activities related

12

to this action occurred in Brazil and allegedly resulted in one Brazilian company (DAL) receiving a contract over another (M-I Brazil). The Court also notes that M-I is not a resident of the United States. See e.g., Asahi Metal, 480 U.S. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.").

Plaintiffs' interest in obtaining "convenient and effective relief" in the United States is limited. Nothing in the record gives any indication that it would be more convenient for Plaintiffs to litigate in the United States. Plaintiffs argue that no other country besides the United States can enforce a U.S. patent. However, at least one other federal court has previously disputed this blanket conclusion. See ElcomSoft, Ltd. v. Passcovery Co., Ltd., No. 13-18, 2013 WL 6705188, at *4 (E.D. Va.., Dec. 19, 2013) ("The fact that American courts may hesitate to enforce foreign patents fails to establish that the Russian courts have a similar policy regarding American patents"). Critically, DAL counters that "litigation addressing all of the activities—including the same activities on the *HOS Resolution* and *HOS Pinnacle*—is already occurring in Brazil." Mem. Supp. Mot. Dismiss [Docket No. 61] 22. Given that relevant overlapping litigation is already well underway in Brazil, this factor weighs slightly in favor of M-I.

The judicial efficiency factor weighs heavily in favor of DAL. When evaluating this factor, "courts generally consider where witnesses and evidence are likely to be located." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 574 (2d Cir. 1996) (citations and quotations omitted). This case centers on the activity of Brazilian employees arising from a contract between Brazilian companies. The activities supported extracting Brazilian oil on Brazilian oil rigs using equipment fabricated in Brazil. As such, the majority of witnesses and relevant

discovery are located in Brazil.  Plaintiffs do not challenge this contention in their briefing.

Moreover, the Court cannot find that the United States is the more efficient forum when

litigation is substantially underway in Brazil arising from the same technology and activities at

issue here.

Lastly, the Court agrees with DAL that Brazil's interests are implicated in this action.

Nonparty Petrobras is partially owned by the Country of Brazil.  Because Petrobras hired DAL

to install the accused systems, the outcome of this case will directly impact Petrobras'

operations.  Moreover, the activity that took place on U.S.-flagged ships occurred in the

exclusive economic zone of Brazil—or waters where Brazil has control over economic activities.

For these reasons, the Court cannot conclude that exercise of personal jurisdiction here would

not hinder foreign relations with Brazil.  See Asahi Metal, 480 U.S. at 115 (stating that "the

Federal interest in Government's foreign relations policies" should be considered when

evaluating the reasonableness of asserting jurisdiction over an foreign defendant).  This factor

supports DAL's motion to dismiss.

A careful examination of these factors reveals that exercise of personal jurisdiction over

DAL would be neither reasonable nor fair.  As the Supreme Court has cautioned, "[g]reat care

and reserve should be exercised when extending our notions of personal jurisdiction into the

international field." Id. at 115.  Personal jurisdiction here does not comport with due process

and, for this reason, DAL's motion to dismiss is granted.

### IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Dynamic Air Ltda.'s Motion to Dismiss [Docket No. 22] is

**GRANTED**; and

2. The Complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

<u>     s/Ann D. Montgomery     </u>
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 1, 2016.